*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0262**

Randy Terrell Mayberry, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 13, 2023**
**Affirmed**
**Bratvold, Judge**

Hennepin County District Court
File Nos. 27-CR-20-26660, 27-CR-21-3163

Randy Terrell Mayberry, Moose Lake, Minnesota (pro se appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Anna R. Light, Assistant County Attorney,
Minneapolis, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Reyes, Judge; and Smith,

Tracy M., Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

In this appeal from an order denying postconviction relief, appellant argues that the

district court abused its discretion because (1) his claims are not procedurally barred,

(2) his trial and appellate counsel provided ineffective assistance, and (3) the district court

erred by denying him relief from his underlying convictions for unlawful possession of a firearm and second-degree assault based on his statutory and constitutional challenges. Because most of appellant's postconviction claims are procedurally barred and his claim for ineffective assistance of appellate counsel fails on the merits, we conclude that the district court did not abuse its discretion in denying postconviction relief. We also conclude that the district court did not err by denying the postconviction petition without an evidentiary hearing. Thus, we affirm.

## FACTS

Two complaints underlie the convictions challenged in this appeal. In December 2020, respondent State of Minnesota charged appellant Randy Terrell Mayberry with fifth-degree drug possession under Minn. Stat. § 152.025, subd. 2(1) (2020), and unlawful possession of a firearm under Minn. Stat. § 624.713, subd. 1(2) (2020). In February 2021, the state charged Mayberry with second-degree assault under Minn. Stat. § 609.222, subd. 2 (2020). The district court convicted Mayberry of unlawful firearm possession and second-degree assault. Following a direct appeal, we affirmed Mayberry's convictions. *State v. Mayberry*, No. A21-1252, 2022 WL 3149087, at *1 (Minn. App. Aug. 8, 2022). Our opinion summarizes the facts relevant to this appeal based on our prior opinion.

At a hearing in May 2021, the state offered to recommend a "downward durational departure of concurrent 48-month prison terms and dismissal of the drug-possession charge" in exchange for Mayberry's guilty pleas to unlawful firearm possession and second-degree assault. *Id.* Mayberry did not accept the offer at the hearing. *Id.* "At this same hearing, Mayberry also complained that he received ineffective assistance of counsel

because, he alleged, his counsel had not conducted the investigation that he requested, and he believed his counsel was in 'cahoots with the prosecutor.'" *Id.* The district court "cautioned Mayberry about the risks of proceeding without counsel and asked Mayberry to meet with the managing attorney for the public defender's office." *Id.*

At the next hearing, Mayberry appeared with his appointed counsel. *Id.* Mayberry informed the district court that he would "continue to retain" his counsel and that he wanted to accept the state's plea offer. *Id.* The district court scheduled a plea hearing for the next day, and Mayberry "pleaded guilty to being a felon in possession of a firearm and second-degree assault." *Id.* "Mayberry's counsel questioned" him on the record "about his decision to plead guilty." *Id.* He "agreed that he reviewed the plea petitions with his counsel," was satisfied with his counsel's performance, understood his rights, and decided to plead guilty freely and voluntarily. *Id.* "Mayberry then admitted to facts supporting both charges. The district court accepted the guilty pleas and scheduled a sentencing hearing." *Id.*

A week after Mayberry entered his guilty pleas, he filed five motions; one motion raised ineffective assistance of counsel, and another motion asked for permission to withdraw his pleas. *Id.* at *2.

At his scheduled sentencing hearing, Mayberry stated that "he intended to proceed pro se" on these motions. *Id.* "The district court continued the hearing until later that day so that Mayberry's counsel could review with Mayberry a petition to proceed pro se." *Id.* During the continued hearing, Mayberry's attorney informed the district court that they reviewed the petition, which Mayberry signed. *Id.* "The district court asked Mayberry

3

whether he had enough time to review the petition to proceed pro se." *Id.* Mayberry said that he had reviewed the petition and that he "wished to proceed pro se." *Id.* Mayberry's attorney left the hearing, and Mayberry represented himself. *Id.* The district court denied or declined to consider each of Mayberry's motions and sentenced Mayberry to 48 months in prison, as stated in the plea petitions. *Id.* The district court dismissed the drug-possession charge.

Mayberry appealed, arguing that the district court abused its discretion by denying his motion to withdraw his guilty pleas and that his waiver of counsel was invalid. *Id.* at *2-3. We determined that the district court acted within its discretion when it denied Mayberry's motion to withdraw his guilty pleas because Mayberry's dissatisfaction with his attorney's performance was not grounds for plea withdrawal. *Id.* at *3. We also determined that Mayberry's waiver of counsel was valid because "the entire record supports the district court's conclusion that Mayberry's waiver was knowing and intelligent." *Id.* at *4-5.

Mayberry petitioned for postconviction relief on October 10, 2022, raising the following claims: (1) his trial counsel provided ineffective assistance of counsel, and the district court erred when it declined to hear the claim before sentencing; (2) his appellate counsel provided ineffective assistance of counsel; and (3) his conviction for unlawful possession of a firearm under Minn. Stat. § 624.713, subd. 1(2), must be reversed because (a) Mayberry had not been convicted of a "crime of violence" as required by the statute; (b) the relevant statute and related provisions, Minn. Stat. §§ 624.713, 590.05 (2020), are unconstitutional; and (c) the relevant statute only applies to persons previously

"adjudicated delinquent or convicted as an extended jurisdiction juvenile." Minn. Stat. § 624.713, subd. 1(2). Mayberry requested an evidentiary hearing.

The district court denied Mayberry's postconviction petition without an evidentiary hearing. The district court determined, among other things, that Mayberry's postconviction claims are procedurally barred, his claims for ineffective assistance of trial and appellate counsel fail on the merits, and his statutory and constitutional challenges to his unlawful-firearm-possession conviction lack merit.

Mayberry appeals.

## DECISION

Appellate courts review a district court's denial of a petition for postconviction relief for abuse of discretion. *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017). A district court abuses its discretion if it "exercise[s] its discretion in an arbitrary or capricious manner, base[s] its ruling on an erroneous view of the law, or [makes] clearly erroneous factual findings." *Id.* (quotation omitted) (applying this standard in a postconviction appeal). Legal issues relating to a petition for postconviction relief are subject to de novo review, and factual issues are reviewed for whether the record evidence reasonably supports the findings. *Id.*

I. **The district court acted within its discretion when it determined that most of Mayberry's postconviction claims are procedurally barred.**

"The court . . . may summarily deny a petition when the issues raised in it have previously been decided by the court of appeals or the supreme court in the same case." Minn. Stat. § 590.04, subd. 3 (2022). "A petition for postconviction relief after a direct

appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." Minn. Stat. § 590.01, subd. 1 (2022). Taken together, these statutory provisions allow a district court to summarily deny postconviction claims that were already decided in a direct appeal or that could have been raised in a direct appeal. Minn. Stat. §§ 590.01, subd. 1, 590.04, subd. 3. Similarly, in *State v. Knaffla*, the supreme court ruled that any claims that were raised or could have been raised on direct appeal are barred in a petition for postconviction relief. 243 N.W.2d 737, 741 (Minn. 1976). This rule of law is commonly described as the "*Knaffla* bar." *See Doppler v. State*, 660 N.W.2d 797, 801 (Minn. 2003).

We consider the effect of the *Knaffla* bar on Mayberry's postconviction petition in three steps. First, Mayberry's postconviction claims that were already decided in his direct appeal are barred. *See* Minn. Stat. § 590.04, subd. 3. The district court, therefore, properly determined that Mayberry's postconviction claims challenging the denial of his motion to withdraw his guilty pleas and the validity of his waiver of counsel are procedurally barred. We note, as did the district court, that Mayberry's arguments about ineffective assistance of trial and appellate counsel appear to reargue the issues raised in his direct appeal.

Second, the parties contend, and we agree, that Mayberry's claim of ineffective assistance of appellate counsel is not barred under *Knaffla* because it was not and could not have been raised on direct appeal. *See Onyelobi v. State*, 932 N.W.2d 272, 289 (Minn. 2019) (explaining that "[c]laims of ineffective assistance of appellate counsel on direct appeal are not barred by the *Knaffla* rule in a first postconviction appeal because they could not have been brought at any earlier time" (emphasis omitted) (quotation omitted)).

6

Third, we consider the district court's decision to reject Mayberry's postconviction claims of ineffective assistance of trial counsel and his statutory and constitutional claims relating to his conviction for unlawful firearm possession as barred under *Knaffla* because they could have been raised on direct appeal. Mayberry asserts that exceptions to the *Knaffla* bar apply to save the postconviction claims he did not raise in his direct appeal because ineffective assistance provided by his appellate counsel prevented him from doing so. A claim is not *Knaffla* barred if "(1) the claim is novel; or (2) the interests of fairness and justice warrant relief." *Sontoya v. State*, 829 N.W.2d 602, 604 (Minn. 2013). "Claims allowed under the second exception must have substantive merit and must be asserted without deliberate or inexcusable delay." *Id.*

Mayberry argues the *Knaffla* exceptions for the first time on appeal. We generally decline to decide issues raised for the first time on appeal. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). But even if we consider the *Knaffla* exceptions, Mayberry does not cite any legal authority or support his argument with legal analysis. "An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." *State v. Andersen*, 871 N.W.2d 910, 915 (Minn. 2015) (quotation omitted).

Also, we are not persuaded that the two exceptions apply to Mayberry's postconviction claims for ineffective assistance of trial counsel and statutory and constitutional challenges to his unlawful-firearm-possession conviction. The novelty exception applies only if a claim is "so novel that its legal basis was not reasonably

7

available at the time of the direct appeal." *Greer v. State*, 673 N.W.2d 151, 155 (Minn. 2004). Mayberry raised an ineffective-assistance-of-trial-counsel claim during the district court proceedings; therefore, it is not novel. Mayberry's statutory and constitutional claims relate to his conviction and are not so novel that it would be unfair to expect Mayberry to have raised them on direct appeal. Thus, the novelty exception does not apply.

Finally, although Mayberry asserts that the second *Knaffla* exception applies, he has not articulated the interests of fairness or justice that require postconviction relief. A court may permit a procedurally barred claim under the interests-of-fairness-and-justice exception if the petitioner provides a "colorable explanation of why he failed to raise these claims previously." *Perry v. State*, 731 N.W.2d 143, 147 (Minn. 2007). The petitioner has the burden to show that "fairness requires consideration of such a claim." *Sanders v. State*, 628 N.W.2d 597, 600-01 (Minn. 2001). An "interests of justice" exception is usually limited to extraordinary circumstances. *Carlton v. State*, 816 N.W.2d 590, 607 (Minn. 2012). Nothing in the record suggests that Mayberry's claims, other than the claim for ineffective assistance of appellate counsel, could not have been raised on direct appeal. Also, as discussed below, his statutory and constitutional claims lack merit.

Therefore, the district court did not abuse its discretion when it determined that all but one of Mayberry's postconviction claims are procedurally barred.

II. **The district court acted within its discretion when it determined that Mayberry's postconviction claim for ineffective assistance of appellate counsel fails on the merits.**

Mayberry argues that his appellate counsel provided ineffective assistance because his counsel (1) did not conduct appropriate investigation or properly research the law and

facts of the case, (2) failed to argue that his conviction for unlawful firearm possession should be overturned on statutory and constitutional grounds, and (3) did not raise ineffective assistance of trial counsel in the direct appeal. The state argues that Mayberry's ineffective-assistance claims fail because selecting issues to raise on appeal is within appellate counsel's discretion and Mayberry's statutory and constitutional arguments rest on a misunderstanding of the unlawful-firearm-possession statute.

Criminal defendants have a right to effective assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. 1, § 6; *State v. Hokanson*, 821 N.W.2d 340, 357 (Minn. 2012). To prove ineffective assistance of counsel, a criminal defendant must show that (1) the representation "fell below an objective standard of reasonableness" and that (2) counsel's failure to meet the objective standard of reasonableness prejudiced the defendant, meaning, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). These two elements are often called "the *Strickland* test." We need not address both elements if one fails. *Id.* at 697. We examine Mayberry's claim for ineffective assistance of appellate counsel under both elements.

### A. Mayberry's ineffective-assistance claim fails the first element of the *Strickland* test.

Under the first element of the *Strickland* test, there is "a strong presumption that counsel's performance fell within a wide range of reasonable assistance." *Gail v. State*, 732 N.W.2d 243, 248 (Minn. 2007). An attorney meets the reasonableness standard if they provide the "client with the representation of an attorney exercising the customary skills

and diligence that a reasonably competent attorney would perform under the circumstances." *State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999) (quotation omitted).

Mayberry argues that his appellate counsel's conduct fell below an objective standard of reasonableness, first, by contending his appellate counsel failed to conduct a meaningful investigation. But Mayberry points to no shortcomings in the factual investigation, and we need not consider issues that are mere assertions and not supported by argument. *Andersen*, 871 N.W.2d at 915. Second, Mayberry contends his appellate counsel did not properly research the facts and law. He asserts that if his counsel's research had been full and proper, his counsel would have made different arguments about the unlawful-firearm-possession statute and would have raised ineffective assistance of trial counsel. We are not persuaded.

An appellate attorney has discretion to decide which issues to raise on appeal and is not obligated to raise all possible issues. *Zornes v. State*, 880 N.W.2d 363, 371 (Minn. 2016). An attorney's conduct does not fall below the required standard of reasonableness "by not raising issues that he or she could have legitimately concluded would not prevail." *Id.* There is a strong presumption that the appellate attorney acted reasonably in selecting which issues to raise. *Id.* This court must determine the first *Strickland* element based on whether the representation was reasonable under the circumstances, not whether counsel raised every issue an appellant wanted them to raise. *Dobbins v. State*, 788 N.W.2d 719, 729 (Minn. 2010).

Mayberry's postconviction petition argues that his appellate counsel provided ineffective assistance because she did not present certain arguments about specific issues.

10

Because Mayberry's ineffective-assistance argument is based on the selection of issues to raise on appeal and he fails to show the appellate counsel's exercise of discretion was not reasonable under the circumstances, Mayberry's claim of ineffective assistance of appellate counsel fails under the first element of the *Strickland* test.

> **B.** **Mayberry's ineffective-assistance claim fails the second element of the *Strickland* test.**

*Strickland* does not require that we address the second element if the ineffective-assistance claim fails on the first element. 466 U.S. at 697. We nonetheless proceed to analyze the second element, in an abundance of caution, to resolve Mayberry's postconviction challenges to his unlawful-firearm-possession conviction and determine whether he was prejudiced by his appellate counsel's decision not to raise the statutory and constitutional issues.

> **1.** **Mayberry was not prejudiced by appellate counsel's failure to argue that the unlawful-firearm-possession statute does not apply to him based on his prior drug conviction.**

Mayberry argues that his appellate counsel should have challenged his conviction for unlawful firearm possession because the conviction requires the state to prove a previous conviction for a "crime of violence" and the state failed to do so. The state argues that the unlawful-firearm-possession statute includes controlled-substance offenses as "crime[s] of violence." The state contends that Mayberry was ineligible to possess a firearm because he had prior convictions for crimes of violence. His prior convictions occurred in the state of Colorado and included two convictions for "Felony Dangerous Drugs Controlled Substances" and two convictions for "Felony Burglary in the Second

11

Degree." For all these convictions, the sentence or court supervision expired after August 1, 1993.

The relevant statute provides:

> The following persons shall not be entitled to possess ammunition or a pistol or semiautomatic military-style assault weapon or . . . any other firearm: . . .
> (2) . . . *a person who has been convicted of*, or adjudicated delinquent or convicted as an extended jurisdiction juvenile for committing, in this state or elsewhere, *a crime of violence*. For purposes of this section, crime of violence includes crimes in other states or jurisdictions which would have been crimes of violence as herein defined if they had been committed in this state[.]

Minn. Stat. § 624.713, subd. 1(2) (emphasis added).

Mayberry contends that the statutory definition of "crime of violence" includes only crimes with an "element of physical force, dangerous weapon, or the threat" of violence or a dangerous weapon, citing Minn. Stat. § 624.712, subd. 5 (2020). Mayberry's argument asks us to interpret a statute, which we do de novo. *State v. Defatte*, 928 N.W.2d 338, 340 (Minn. 2019). "The objective of statutory interpretation is to ascertain and effectuate the Legislature's intent. If the Legislature's intent is clear from the statute's plain and unambiguous language, then a court interprets the statute according to its plain meaning . . . ." *State v. Haywood*, 886 N.W.2d 485, 488 (Minn. 2016) (quotation omitted). The unambiguous definition of a "crime of violence" in Minn. Stat. § 624.712, subd. 5, includes felony convictions for "chapter 152 (drugs, controlled substances)" offenses.

In short, the unlawful-firearm-possession statute unambiguously provides that a drug conviction under chapter 152 is a "crime of violence," and the record establishes that

Mayberry had a prior felony drug conviction in another state that would have been a crime of violence in Minnesota under chapter 152. We therefore conclude that if Mayberry's appellate counsel had presented this argument on direct appeal, there is no reasonable probability that the outcome would have been different. *See Strickland*, 466 U.S. at 694.

> **2. Mayberry was not prejudiced by appellate counsel's failure to argue that the unlawful-firearm-possession statute is unconstitutional.**

Mayberry asserts that his appellate counsel should have raised constitutional challenges to the unlawful-firearm-possession statute to overturn his conviction. To understand Mayberry's argument, we consider the legislative history of this statute. In 2003, the legislature amended Minn. Stat. §§ 242.31 and 624.713, subd. 1, to provide that those convicted of unlawful possession of a firearm based on a prior conviction for a crime of violence are ineligible to possess firearms for their lifetimes if they have been discharged from their sentence or court supervision on or after August 1, 1993. *See* 2003 Minn. Laws, ch. 28, art. 3, §§ 1, at 290; 8, at 293. Before the 2003 amendments, the firearm-possession ban was for ten years. 2003 Minn. Laws, ch. 28, art. 3, § 1, at 290.

Mayberry contends that the 2003 amendments are unconstitutional for two reasons. First, the amendments are "retroactive," and second, the amendments violate the Equal Protection Clause by creating multiple classifications of offenders—those who have been discharged before and after August 1, 1993. The state argues that the 2003 amendments are not retroactive and do not violate the Equal Protection Clause because they do not treat similarly situated persons differently. We consider Mayberry's constitutional challenges one at a time.

13

First, the 2003 amendments are not retroactive laws. We understand Mayberry's argument to assert that the 2003 amendments are unconstitutional ex post facto laws. An ex post facto law "renders an act punishable in a manner in which it was not punishable when it was committed." *Starkweather v. Blair*, 71 N.W.2d 869, 879 (Minn. 1955). But Mayberry misunderstands the difference between basing a statute on prior conduct and punishing prior conduct that was not punishable at the time. "A statute can be based on prior conduct" without being unconstitutionally ex post facto "so long as it applies to, and is triggered by, conduct occurring after its enactment." *State v. Grillo*, 661 N.W.2d 641, 645 (Minn. App. 2003), *rev. denied* (Minn. Aug. 5, 2003).

The 2003 amendments enacted a lifetime firearm ban for unlawful possession but do not apply the lifetime term to offenders whose ten-year firearm ban had already expired. The 2003 amendments apply only to those subject to the ten-year firearm ban as of 2003 or those who will become subject to the lifetime firearm ban based on unlawful possession that occurs after 2003. *See* 2003 Minn. Laws, ch. 28, art. 3, §§ 1, at 290; 8, at 293 (amending Minn. Stat. §§ 242.31, subd. 2a, 624.713, subd. 1). Thus, the 2003 amendments are based on prior conduct but are triggered by conduct occurring after their enactment. Therefore, the 2003 amendments are not unconstitutional ex post facto laws.

Second, the 2003 amendments do not violate the Equal Protection Clause, which requires that "all persons similarly situated be treated alike under the law." *State v. Merrill*, 450 N.W.2d 318, 321 (Minn. 1990). "A statute violates the Equal Protection Clause when it prescribes different punishments or different degrees of punishment for the same conduct committed under the same circumstances by persons similarly situated." *State v. Frazier*,

14

649 N.W.2d 828, 837 (Minn. 2002). The 2003 amendments do not distinguish between two groups of similarly situated individuals. Instead, the 2003 amendments establish classifications of individuals who are not similarly situated based on whether they were discharged before or after August 1, 1993, and unlawfully possessed a firearm before or after the 2003 amendments were enacted. As the district court wrote: "The different treatment . . . is justified by the change in law. Namely, defendants who illegally possessed a firearm before 2003 are differently situated from those who illegally possessed a firearm after 2003."

Because Mayberry's constitutional challenges to the unlawful-firearm-possession statute lack merit, we conclude there is no reasonable probability that appellate counsel's failure to present these challenges would have changed the outcome of the direct appeal. *See Strickland*, 466 U.S. at 694.

> **3.** **Mayberry was not prejudiced by appellate counsel's failure to argue that the unlawful-firearm-possession statute is limited to persons convicted when under the age of 18.**

Mayberry asserts that his appellate counsel should have argued that his unlawful-firearm-possession conviction must be reversed because the relevant statute applies only to "a person who has been convicted of a crime of violence under the age of 18 years or who has a prior conviction as a[n] adjudicated delinquent." The state argues that Mayberry misreads the statute.

We agree with the state that Mayberry's argument rests on a misunderstanding of the relevant statute, which unambiguously provides that someone who has been "convicted of . . . a crime of violence" is ineligible to possess a firearm—in addition to those who were

15

"adjudicated delinquent or convicted as an extended jurisdiction juvenile" of a crime of violence. Minn. Stat. § 624.713, subd. 1(2). Because the relevant statute is not limited to persons convicted when under the age of 18, and because the record establishes that Mayberry was convicted of a crime of violence before he possessed the firearm that led to the December 2020 charges, there is no reasonable probability that the result of the direct appeal would have been different if his appellate counsel had presented this argument. *See Strickland*, 466 U.S. at 694.

In short, we conclude that even if Mayberry's appellate counsel had presented the statutory and constitutional arguments raised in Mayberry's postconviction petition, it would not have changed the outcome of the direct appeal for three reasons: (1) the record establishes that Mayberry is an ineligible person under Minn. Stat. § 624.712, subd. 5, because he was convicted of a crime of violence; (2) Mayberry's constitutional challenges to the unlawful-firearm-possession statute lack merit; and (3) the relevant provision of the unlawful-firearm-possession statute is not limited to persons convicted when under the age of 18. Thus, the district court did not abuse its discretion by ruling that Mayberry's postconviction claim for ineffective assistance of appellate counsel lacks merit.

### III. The district court did not abuse its discretion by denying Mayberry's postconviction petition without an evidentiary hearing.

A district court must hold an evidentiary hearing on a petition for postconviction relief "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2022). In making this decision, "a postconviction court considers the facts alleged in the petition as true and

16

construes them in the light most favorable to the petitioner." *Andersen v. State*, 913 N.W.2d 417, 422-23 (Minn. 2018) (quotation omitted). A postconviction court is not required to hold an evidentiary hearing if the "petitioner alleges facts that, even if true, are legally insufficient to entitle him to the requested relief." *Hughes v. State*, 851 N.W.2d 49, 52 (Minn. 2014). Appellate courts review "the ultimate decision by the postconviction court to grant or deny an evidentiary hearing for an abuse of discretion." *Caldwell v. State*, 853 N.W.2d 766, 770 (Minn. 2014).

The district court determined that Mayberry's postconviction petition did not allege facts that would entitle him to relief, and therefore, Mayberry was not entitled to an evidentiary hearing. Given that all but one of Mayberry's postconviction claims are procedurally barred and that his claim of ineffective assistance of appellate counsel raises only questions of law and fails both elements of the *Strickland* test, we conclude that the district court did not abuse its discretion in denying Mayberry's postconviction petition without an evidentiary hearing.

**Affirmed.**