*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-0492**

State of Minnesota,
Respondent,

vs.

Luke Vincent Bruns,
Appellant.

**Filed August 26, 2024
Affirmed
Florey, Judge**[*]

Crow Wing County District Court
File No. 18-CR-23-346

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Quinn T. Hoffman, Assistant County Attorney, Brainerd, Minnesota (for respondent)

Adam Justinger, SW&L Attorneys, Fargo, North Dakota (for appellant)

Considered and decided by Reyes, Presiding Judge; Wheelock, Judge; and Florey, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FLOREY**, Judge

In this direct appeal from the judgment of conviction for fourth-degree driving while impaired (DWI), appellant Luke Vincent Bruns argues that the district court erred in denying his motion to suppress the evidence against him because police lacked reasonable suspicion to stop his tracked snow machine for failing to stop at stop signs and for not having a visible taillight. Because the stop was supported by reasonable, articulable suspicion, we affirm.

## FACTS

On January 20, 2023, an officer with the Crosby Police Department observed a vehicle that did not appear to have functioning brake lights and failed to stop at stop signs. As the officer approached, he realized that the "big, white, boxy-looking vehicle . . . had two tracks, like snowmobile tracks, and had a single hatch door in the rear, and had two illuminated lights, but they weren't indicating any braking." The officer observed the vehicle travel through two stop signs, believing the vehicle slowed but did not stop at either sign, before initiating a traffic stop.

Respondent State of Minnesota charged Bruns with fourth-degree DWI in violation of Minn. Stat. 169A.27, subd. 1 (2022). Bruns moved to suppress the evidence against him, claiming that, because Minnesota law does not require the type of vehicle that he was driving to have brake lights, the officer's suspicion of criminal activity was based upon a mistake of law. The state, relying on the officer's belief that Bruns failed to stop at the stop signs, argued that the stop was supported by reasonable, articulable suspicion.

Following an evidentiary hearing, the district court denied Bruns's motion, determining that the lack of visible brake lights provided the officer with "reasonable suspicion that the vehicle had either not properly stopped, or it did not have working brake lights." After a trial on stipulated evidence, the district court found Bruns guilty of fourth-degree DWI.

Bruns appeals.

## DECISION

Bruns argues that the district court erred by not suppressing the evidence from the traffic stop, claiming that the traffic stop was based upon the officer's mistake of law and was therefore unsupported by reasonable, articulable suspicion.

Appellate courts, when reviewing a district court's decision on a pretrial motion to suppress evidence, review the district court's factual findings for clear error and review its legal determinations de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). The interpretation of a statute is reviewed de novo. *State v. Defatte*, 928 N.W.2d 338, 340 (Minn. 2019).

The United States Constitution prohibits unreasonable searches and seizures by the government. U.S. Const. amend. IV. For a limited investigatory stop to be reasonable, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The standard for reasonable suspicion is not high, and the standard is met when a police officer "can articulate specific facts which, taken together with

3

rational inferences from those facts, objectively support the officer's suspicion." *State v. Lugo*, 887 N.W.2d 476, 486 (Minn. 2016).

At the suppression hearing, the officer testified that he suspected Bruns had failed to comply with traffic signs or had an equipment violation is because the officer did not see brake lights illuminate when Bruns passed through the stop signs.

Minnesota law requires the driver of a vehicle to stop at stop signs. Minn. Stat. §§ 169.20, subd. 3(b), .30(b) (2022). The officer did not see brake lights illuminate as the vehicle passed through two stop signs, which led to the officer to reasonably believe that the vehicle had failed to stop at the stop signs.

Still, Bruns claims that the officer mistakenly suspected criminal activity because the vehicle that he was operating qualifies as a snowmobile and is, therefore, not required to have brake lights. *See* Minn. Stat. §§ 84.81, subd. 3 (defining snowmobile), .87, subd. 1(f) (excepting snowmobiles from the equipment requirements of chapters 169 and 169A) (2022). Because the statute requires only that snowmobiles have working brakes, not brake lights, Minn. Stat. § 84.87, subd. 1(d) (2022), Bruns claims that the lack of visible brake lights cannot form the basis for the traffic stop. Bruns cites cases in which the supreme court has held that the stop was illegal because it was based on a mistake of law, but, in each of those cases, the stop was based on conduct that was not illegal under the court's interpretation of the relevant statute. *See State v. Anderson*, 683 N.W.2d 818, 820 (Minn. 2004) ("Minnesota Statutes § 169.18, subd. 11 (2002), which requires a motorist to move 'a lane away' from an emergency vehicle on the side of the road does not require a motorist to provide a lane between the passing vehicle and the emergency vehicle.");

4

*State v. George*, 557 N.W.2d 575, 576 (Minn. 1997) ("A law enforcement officer's belief a motorcycle headlight configuration to be illegal is not an objective legal basis for a traffic stop where the headlight configuration clearly conformed to Minnesota law.").

Here, in contrast, the officer did not see brake lights illuminate as Bruns passed through two intersections, which caused the officer to reasonably infer that Bruns had failed to stop at the stop signs in violation of Minnesota law. Accordingly, even if the officer was mistaken in believing that Bruns's vehicle was required to have operable brake lights, the officer nevertheless had reasonable articulable suspicion of a traffic violation to justify the stop.

**Affirmed.**